IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
---

JASON C. O'KANE

                Plaintiff,                           OPINION AND ORDER

    v.

                                              22-cv-083-wmc

KILOLO KIJAKAZI, Acting Commissioner of
Social Security.

                Defendants.

---

Plaintiff Jason C. O'Kane seeks judicial review under 42 U.S.C. § 405(g), of a final determination that he was not disabled within the meaning of the Social Security Act. An administrative law judge ("ALJ") reached that conclusion fourteen days after holding a telephonic hearing on O'Kane's claims. While O'Kane makes a variety of arguments, the court understands his main contentions for remand to be that the ALJ did not properly (1) account for O'Kane's moderate limitation in concentration, persistence, and pace, and (2) weigh the opinions of Drs. Weber and Barthell. For the reasons that follow, the court affirms the opinion of the ALJ.

UNDISPUTED FACTS

**A. Background**

Plaintiff Jason O'Kane was 49 years old at the time of his alleged onset date. (AR 28.) O'Kane also has at least a high school education, can communicate in English, and previously worked in industrial maintenance and repair. (*Id*. at 27-28.)

### B. ALJ Decision

On September 14, 2021, ALJ Wayne L. Ritter held a hearing in which O'Kane appeared by telephone. (AR 13.) In his September 28 opinion, the ALJ determined that O'Kane was not disabled for the purposes of the Social Security Act. As an initial step, the ALJ found that O'Kane had not had substantial gainful activity since June 17, 2020, and next that he "has the following severe impairments: chronic pain syndrome/somatic symptom disorder, right shoulder disorder, migraines, depression, and post-traumatic stress disorder (PTSD)." (AR 15.) However, the ALJ ultimately found that none of these conditions nor any combination of them "meets or medically equals" the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (AR 18.)

Ultimately, the ALJ found O'Kane had a Residual Functional Capacity ("RFC") that allowed for medium work with the following restrictions:

> He can perform simple, routine, and repetitive tasks, with no fast-paced work, only simple, work-related decision making, occasional workplace changes, and occasional interaction with co-workers, supervisors, and the public. (AR 20.)

With these restrictions, a vocational expert testified that O'Kane would be able to perform a significant number of jobs within the national economy. (AR 28.) In reliance on this opinion, therefore, the ALJ decided O'Kane was "not disabled." (AR 29.)

## OPINION

A federal court's standard of review with respect to a final decision by the Commissioner of Social Security is well-settled. Findings of fact are "conclusive," so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence

means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Even where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993). At the same time, the court must conduct a "critical review of the evidence," *id*., and ensure the ALJ has provided "a logical bridge" between findings of fact and conclusions of law. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).

I. Medical Findings

Medical opinion evidence is evaluated for consistency and supportability. The court "[does] not review medical opinions independently but rather review the ALJ's weighing of those opinions for substantial evidence, and we only overturn that weighing if no reasonable mind could accept the ALJ's conclusion." *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022). Dr. Robert Barthell, Psy.D., opined that O'Kane has moderate limitations in concentration, persistence, and pace and could keep focus for two-to-three step tasks for two hours at a time. (AR 26.) Barthell also suggested that O'Kane would do best in jobs without daily changes in tasks. (AR 26.) Dr. Jason Kocina, Psy.D., largely agreed with Dr. Barthell's CPP analysis. (AR 26.) However, the ALJ somewhat discounted

3

these opinions because O'Kane's testimony suggested a higher capacity for concentration, persistence and pace than indicated in Kocina's opinions. (AR 26.)

The ALJ next evaluated consultative psychologist Kurt Weber's opinion. Weber endorsed moderate limitation in the ability to understand, remember, and apply information and marked limitations in the other three categories, including CPP. In discussing why Weber's opinion was only partially persuasive, the ALJ noted that Dr. Weber found O'Kane had an even temperament during his examination, with only some difficulty in memory-related tasks. (AR 27.)

More important to the supportability of both Barthell's and Weber's findings is the fact that O'Kane's medical history and disclosed activities conflicted with the more extreme findings of other doctors. In testimony and when speaking to medical providers, O'Kane described an active and physically demanding lifestyle, including often fishing or hunting deer and coyotes with a crossbow. (AR 24.) While O'Kane receives assistance with skinning and quartering his deer, he butchers and processes the meat himself. (*Id*.) Because he lives on a large, rural property, O'Kane also fells trees with a chainsaw, then gathers and hauls the wood back home. Finally, the ALJ noted that O'Kane rides an ATV and mower for his lawn, uses a garden tiller, and performs maintenance and renovation on his mother's house. (*Id*.) All of these activities involve a high level of physical exertion and concentration.

O'Kane's medical history further confirms that his pain improved significantly after chiropractic care and acupuncture. (AR 22). For instance, he reported hauling five cords of wood the day before a chiropractor appointment and only had pain of 1-2/10.

Medication management helped with O'Kane's migraines, too. After stopping ibuprofen and taking propranolol for headache prevention, O'Kane reported a large reduction in the frequency and severity of headaches. (AR 22).

Finally, O'Kane's history suggest he gets along with others *better* than either Barthell or Weber's findings would suggest. O'Kane has alleged that his mental symptoms have remained constant over time, yet he acknowledges working for twenty years with the USPS while symptomatic. During that time, he was also able to work with others and regulate his emotions appropriately. (AR 26). Similarly, he has managed to maintain relationships with family, even recently reconnecting with his estranged brother. (AR 19.)

Nevertheless, plaintiff argues that the ALJ failed to consider how consistent these same medical opinions were with other evidence in the record, (Pl.'s Op. Br. (dkt. #17) 20.) As an initial matter, the ALJ repeatedly noted that O'Kane's own stated activities are inconsistent with a claim of disabling symptoms. (AR 19). Moreover, while the ALJ does not point to specific findings that contradict Barthell and Weber's opinions when discussing their persuasiveness, he had already covered that subject in previous paragraphs; even if the ALJ failed to point to findings that are inconsistent with Weber's opinion in the most relevant section (Pl.'s Op. Br. (dkt. #17) 32), the court is allowed to look at the ALJ's opinion as a whole. Indeed, as noted by the Eastern District of Wisconsin, "[t]o the extent plaintiff may be arguing the ALJ was required to specifically discuss consistency within one section of his decision, he overlooks the rule that ALJ decisions are read as a whole." *Green v. Kijakazi*, No. 21-C-678, 2022 WL 1644936, at *22 (E.D. Wis. May 23, 2022).

5

Taking a more holistic view, the ALJ continuously noted that O'Kane's own description of his regular activities is inconsistent with the more extreme limitations supported by Barthell and Weber. O'Kane's admitted activities conflict with his reports of severe pain, difficulty ambulating, and inability to be around others. While O'Kane may disagree with the ALJ's decision to credit those activities while discounting certain medical findings, that opinion is not plainly unreasonable and courts "will affirm the ALJ's decision if we are confident that the ALJ's reasoning sufficiently accounted for the substance of the prescribed factors" even in absence of express analysis. *Ray v. Saul*, 861 F. App'x 102, 105–06 (7th Cir. 2021). Here, the court is confident in the ALJ's reasoning.

O'Kane makes one other arguments about the ALJ's discount of Weber's opinion, which the court will address briefly. One of the reasons that the ALJ discounted his testimony was because "Dr. Weber did not review the record applicable to the period at issue." (AR 27). As the claimant points out, and the government acknowledges, this is incorrect. To the contrary, contemporaneous records show Dr. Weber had access to O'Kane's longitudinal record and used it in diagnosing O'Kane. (AR 353.) Plus, the ALJ's opinion was further supported by O'Kane's stated activities and positive response to medical treatments. While the ALJ made a mistake, but the Seventh Circuit has overlooked similar mistakes by the ALJ where "substantial evidence supported an independent basis for discounting [the doctor's] opinion." *Pavlicek v. Saul*, 994 F.3d 777, 782 (7th Cir. 2021). That is the case here.

**II.     Concentration, Persistence, and Pace**

Alternatively, O'Kane argues that the ALJ's RFC limiting him to simple and routine work does not address his problems with concentration, persistence and pace ("CPP"). (Pl.'s Op. Br. (dkt. 17) 9.)  Certainly, "limiting a hypothetical to simple, repetitive work does not necessarily address deficiencies of concentration, persistence and pace." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010).  However, "the law does not require ALJs to use certain words, or to refrain from using others, to describe the pace at which a claimant is able to work."  *Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020). Rather, the question is whether "the ALJ tailored [his] RFC to his CPP limitations without assuming that restricting him to unskilled work would account for his mental health impairments." *Id*.  In *Martin*, the Seventh Circuit found that the ALJ addressed each prong of CPP in the RFC determination, making its formulation sufficient.  *Id*.

Here, the ALJ largely relied on the opinions of the consultative medical experts and on O'Kane's own testimony in crafting an RFC consistent with O'Kane's deficiencies in CPP.  As previously noted, the ALJ's decision to credit some medical findings while rejecting others was also well-supported.  Specifically, O'Kane's hobbies of hunting, fishing, using heavy equipment, butchering deer, and renovating his mother's home suggest that he has at least an average ability to concentrate, persist, and maintain pace.

Even setting aside this evidence, an imperfect RFC is not necessarily a basis for remand where "[i]t is unclear what kinds of work restrictions might address [a claimant's] limitations in concentration, persistence, or pace because he hypothesizes none." *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019).  This is particularly true where O'Kane's

7

limitations in CPP appear to be *covered* by the ALJ's RFC finding that "he can perform simple, routine, and repetitive tasks, with no fast-paced work, only simple, work-related decision making, occasional workplace changes, and occasional interaction with co-workers, supervisors, and the public." (AR 20.) Indeed, the RFC adopted by the ALJ here is almost entirely geared towards O'Kane's mental limitations, and O'Kane does not suggest any limitations that should have been added.[1]

Ultimately, this is a case about a man whose work history and self-proclaimed activities point to a much higher level of functioning than indicated by medical opinions. In such cases, the ALJ has broad discretion in deciding what conflicting evidence to credit. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that reversal is necessary "only when the ALJ's determination lacks any explanation or support.") Here, the ALJ pointed to normal test findings, a long history of work while allegedly suffering the same symptoms, and an active life, involving physically demanding outdoorsmanship and other demanding activities. While plaintiff may disagree with the ALJ's weighing of those factors, this court's place is *not* to re-weigh the evidence.

---

[1] For example, while O'Kane notes that his records suggest he has heightened startle response and the need for redirection, he does not explain what change would be needed for the RFC to address this.

8

ORDER

IT IS ORDERED that:

1) The decision of defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, denying plaintiff Jason O'Kane's application for social security disability benefits is AFFIRMED.

2) The clerk's office is directed to enter judgment in defendant's favor.

Entered this 23rd day of March, 2023.

        BY THE COURT:

        /s/

        _____
        WILLIAM M. CONLEY
        District Judge